UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| G.B. and D.B. o/b/o J.B., | : | Civil Action No. 07-4300 (JJH) |
| Plaintiffs, | : | |
| v. | : | MEMORANDUM OPINION |
| BRIDGEWATER-RARITAN REGIONAL BOARD OF EDUCATION, et al., | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

      Presently before the Court are Defendant Bridgewater-Raritan Regional Board of Education, et al., ("Defendant" or " the District") Motion for Judgment as a Matter of Law on the Record Below [dkt. entry no. 18], returnable January 20, 2009, and Plaintiffs G.B. and D.B. o/b/o J.B. ("Plaintiffs") Cross Motion for a New Hearing Before the Office of Administrative Law or Supplementation of the Record before the District Court [dkt. entry no. 20], returnable January 20, 2009. Defendant and Plaintiffs both filed reply briefs on February 10, 2009. The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to Federal Rule of Civil Procedure 73 on December 30, 2008 [dkt. entry no. 21]. The Court considered the Motions without oral argument pursuant to FED. R. CIV. P. 78. For the reasons stated below, after fully considering all papers submitted by the parties, and for good cause shown, the Court GRANTS Defendant's Motion for Judgment as a Matter of Law on the Record Below [dkt. entry no. 18] and DENIES Plaintiffs' Cross Motion for a New Hearing Before the Office of Administrative

1

Law or Supplementation of the Record before the District Court [dkt. entry no. 20].

I.      **BACKGROUND**

This Individuals with Disabilities Education Act ("IDEA") case was brought on J.B.'s behalf by Plaintiffs, J.B.'s parents. It concerns Bridgewater's proposed individualized education program ("IEP") for J.B. for the 2005-06 academic year in which J.B. would attend his first year of preschool. The proposed IEP at issue recommended that J.B. begin his preschool education in public school at the Applied Behavioral Analysis ("A.B.A.") Autism Program at the Adamsville School for the 2005-06 school year. It called for a four-and-a-half-day per week in-district preschool disabled program with individual speech therapy two times a week for twenty minutes and consultation speech therapy once per week. The proposed program utilizes approximately 29 hours of A.B.A. intervention per week. On Fridays, J.B. would attend school for a half-day to allow in-service staff training and parent training sessions to be held in the afternoon. Additionally, in-home parent training would be provided by the District on an as-needed basis.

The proposed IEP, called for J.B. to be placed in a preschool class in a District where there were three preschool A.B.A. classes during the 2005-06 school year that all had five paraprofessionals who worked with the special education teacher and had no more than six students. The District's practice regarding student-teacher ratio and teaching materials was to examine the needs of each individual student to determine the appropriate staffing ratio and learning materials that each child would require.

The proposed IEP, which was developed as a result of an initial classification meeting on November 15, 2005 during which all parties agreed that J.B. was eligible for special education

and related services, was presented to Plaintiffs following the IEP meeting held on the same date. On January 17, 2006, Plaintiffs claimed they notified the District that they were rejecting J.B's proposed IEP for the 2005-06 school year and requested the District to fund the private school placement of J.B. at Somerset Hills from his third birthday forward.  On February 21, 2006, Plaintiffs repeated their January 17, 2006 request to the District and again notified the Board that they were rejecting J.B.'s proposed IEP.  On April 24, 2006, Plaintiffs filed a petition with the State Department of Education requesting a due process hearing.  Shortly after April 24, 2006, the State Department of Education transmitted the matter to an Administrative Law Judge ("ALJ").  The ALJ heard the matter over eight days and the record was closed on May 25, 2007. In the interim, Plaintiffs chose to continue J.B's placement at the private Somerset Hills.  On June 13, 2007, the ALJ rendered his opinion finding that Plaintiffs had failed to satisfy their burden of proof that the District's proposed IEP was inappropriate and not reasonably calculated to provide J.B. with
a meaningful educational benefit in the least restrictive environment, and denied the Plaintiffs' reimbursement claims for the costs of tuition and transportation to Somerset Hills from November 20, 2005 forward.

    **II.**    **STANDARD OF REVIEW**

        **A.**    **IDEA**

The IDEA "establishes minimum requirements for the education of children with disabilities." *Holmes v. Millcreek Twp. School Dist.*, 205 F.3d 583, 589 (3d Cir. 2000).  It mandates that all states that receive federal funding under the statute guarantee to provide "a free and appropriate education" ("FAPE") to all disabled children. 20 U.S.C. § 1412.  A FAPE exists

where a child is provided with "such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 189 (1982). Pursuant to the IDEA, for every disabled child identified as eligible for special education, a written statement called an IEP is created. 20 U.S.C. §1412(a)(4). The IEP, which is specially designed for each child and which addresses several elements as outlined in 20 U.S.C. 1414(d)(1)(A), is designed to effectuate a FAPE for the child. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003). The IDEA does not require that a school district maximize a student's potential or provide the best education possible. Instead, the IDEA requires the school district to provide a "'basic floor of opportunity' but not necessarily 'the optimal level of services. . . .'" *Holmes*, 205 F.3d at 589-90 (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 533-34 (3d Cir. 1995)). The school district's statutory obligation is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203. Thus, the IEP must provide "meaningful" access to education and confer "some educational benefit" upon the child. *Id.* at 192, 200. Further, while the IEP need not provide for the optimal level of services, in order to be appropriate, the educational benefit conferred must be more than trivial. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999). A satisfactory IEP must provide significant learning and provide meaningful education benefit upon the child. *Id*.

The IDEA also requires that children falling under its provisions be educated in the "least restrictive environment." 20 U.S.C. § 1412(a)(5)(A). Indeed, the IDEA expresses a strong preference for "mainstreaming" students: educating disabled students side-by-side non-disabled students. The Third Circuit has interpreted this requirement to mean "mandating education 'in

4

the least restrictive environment that will provide [the student] with a meaningful educational benefit.'" *S.H.*, 336 F.3d at 265 (quoting *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)).  In other words, "[t]he least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch.*, 62 F.3d at 535.

Where parents believes that a school district's IEP does not provide their child with a FAPE as required by the IDEA, they may object to the IEP by requesting either a due process hearing or a mediation session.  *See Lascari v. Bd. of Educ.*, 116 N.J. 30, 37 (1989).  The burden of establishing the inadequacy of the proposed IEP rests on the challenging party.  *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *L.E. v. Ramsey Bd. Of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006).  The Court's inquiry, however, remains focused on evaluating "the IEP actually offered and not one that the school board could have provided if it had been so inclined." *Lascari*, 116 N.J. at 46.

Once an Administrative Law Judge has issued a final order following a due process hearing, the aggrieved party may appeal that decision to a state court of competent jurisdiction or to the federal district court.  20 U.S.C. § 1415(c)(2).

### B. Review of an Administrative Law Judge's Decision

Defendant's Motion for Judgment as a Matter of Law on the Record Below seeks to affirm the ALJ's decision, while, Plaintiffs' Motion, which is characterized as a Motion for Reversal of the Decision of the ALJ, is essentially an appeal of the ALJ's decision that and seeking of a reversal of said decision.  In reviewing an administrative determination in an IDEA

case, the Court applies a modified version of *de novo* review. *S.H.*, 336 F.3d at 270. Under this standard of review, while the Court must make its own findings based on a preponderance of the evidence, the Court must also afford "'due weight'" to the administrative law judge's determination. *Rowley*, 458 U.S. at 206. The purpose of the "due weight" standard is to "prevent the court from imposing its own view of preferable educational methods on the states." *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993) (citing *Rowley*, 458 U.S. at 207). Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct," and, where made, the administrative law judge's credibility determinations are "due special weight." *Shore Reg'l High School Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *S.H.*, 336 F.3d at 271). The deference afforded the administrative decision is, however, qualified, and while the Court must consider the administrative findings of fact, it need not necessarily accept same. *D.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 898 (3d Cir. 1997). However, "[i]f a reviewing court fails to adhere to [the administrative findings of fact], it is obliged to explain why." *S.H.*, 336 F.3d at 270 (internal quotation marks and citation omitted).

### III.  DISCUSSION

The ALJ found that Plaintiffs had failed to satisfy their burden of proof that the District's proposed IEP was inappropriate and not reasonably calculated to provide J.B. with a FAPE as required by the IDEA, and denied the Plaintiffs' reimbursement claims for the costs of tuition and transportation to Somerset Hills from November 20, 2005 forward. Plaintiffs contest the ALJ's decision and ask this Court to find that the District's proposed IEP for the 2005-06 school year deprived J.B. of a FAPE. Plaintiffs also ask this Court to find that their unilateral placement

of J.B. at Somerset Hills was appropriate and to grant retroactive reimbursement for this placement.

The record below establishes that considerable deliberation went into the ALJ's findings. The ALJ was presented with and considered a myriad of exhibits and heard testimony from several witnesses. His decision sets forth a detailed synopsis of the testimony offered before him by both parties. It also contains a measured analysis of the facts and expert opinions offered by the parties.

With respect to the District's proposed IEP for the 2005-06 school year, the ALJ found that it provided J.B. with the opportunity for significant learning and a meaningful education benefit. In coming to this conclusion, the ALJ heard testimony from

(1) D.B., J.B.'s mother;

(2) Dr. Anita Breslin, a psychologist who evaluated J.B. after being contacted by the Plaintiffs and who was qualified as an expert in psychology, A.B.A. behavior and special education of children with autism;

(3) Dr. Kevin Brothers, the director of Somerset Hills who was stipulated to be an expert in the fields of A.B.A., special education of children with autism and psychology;

(4) Karen McMillan, a Behavioral Specialist for the District was stipulated to be an expert in the area of autism, A.B.A., special education of children with autism and is a board certified behavior analyst;

(5) Andrew Brandon, an employee of the District who was stipulated to be an expert in speech and language therapy;

(6) Kate Lynn Murphy, a school psychologist for the District who was stipulated to be an expert

in the field of school psychology;

(7) David Lieberman, Executive Director of Student Services for the District who was stipulated to be expert in the area of special education programming administration;

(8) Leif Albright, replaced Karen McMillian while she was on maternity leave and served as a consultant for the District for the 2005-06 school and was stipulated to be an expert in the field of A.B.A. as well as special education of children with autism utilizing A.B.A.; and

(9) Beth Hopkins, a preschool autistic teacher for the District since 2003 who was stipulated to be an expert in the field of special education and teaching children with autism.

Not surprisingly, D.B., Dr. Breslin and Dr. Brothers had different opinions regarding J.B.'s educational progress and the propriety of the District's proposed IEP for the 2005-06 academic year from Ms. McMillan, Ms. Hopkins, Ms. Murphy, Mr. Albright and Mr. Lieberman.  The former believed that the proposed IEP could not meet J.B.'s needs of one-to-one instruction, a minimum of 30-40 hours per week of intensive teaching instruction and parental training, whereas the latter believed that the proposed IEP offered J.B. with a FAPE.  Ultimately, the ALJ concluded that Ms. McMillan, Ms. Hopkins, Ms. Murphy, Mr. Albright and Mr. Lieberman provided more detailed and credible testimony than Dr. Breslin and Dr. Brothers.  Consequently, the ALJ found that "the District properly considered J.B.'s potential and education needs and that the IEP for the 2005-2006 school year was reasonably calculated to provide him with meaningful educational benefit in the least restrictive environment."  (ALJ's June 13, 2007 Op. at 33).

Plaintiffs contest the ALJ's findings for several reasons.  First, they argue that the ALJ did not allow all relevant evidence to be set forth on the record, specifically, neither of Plaintiff's experts were permitted to testify regarding their professional qualifications.  Second, Plaintiffs

argue that the ALJ did not correctly apply the applicable law in his opinion in two areas. Specifically, Plaintiffs argue that instead of basing his opinion on the appropriateness of the proposed program for J.B., the ALJ inappropriately based it on his perceived qualifications of the experts and the ALJ improperly focused upon an IEP that the District could have provided instead of the one actually offered. Third, Plaintiffs argue that the proposed IEP was not reasonably calculated to confer a meaningful educational benefit to J.B. The Court addresses each of these arguments in turn. After reviewing the evidence in the record as well as the ALJ's assessment of the arguments raised by the parties, the Court finds that the ALJ's finding that the proposed IEP for the 2005-06 school was reasonably calculated to provide J.B. with a meaningful educational benefit in the least restrictive environment is supported by the evidence in the record. Plaintiffs' expert witnesses testified that the District's proposed IEP was not reasonably calculated to provide J.B. with a meaningful educational benefit, specifically because it failed to a) guarantee a one-to-one student to teacher ratio; b) include any opportunity for generalization or home program services; c) include a behavior program; and d) have five full days per week. Conversely, the witnesses proffered by the District testified that they would mold their program to fit the needs of J.B. Specifically, the District witnesses explained that J.B. would start with a one-to-one student teacher ratio at the Adamsville School to meet his goals and objectives and after this initial period his program would be discussed further. It was also explained that while J.B.'s program did not have a home component, there were parent training sessions, communications through daily notebooks and opportunities to promote generalization. The ALJ found that the District's witnesses, Ms. McMillan, Ms. Hopkins, Ms. Murphy, Mr. Albright and Mr. Lieberman were extremely knowledgeable regarding the programs in the

District and were actually involved in the development of the particular IEP at issue, were more credible than Plaintiffs' witnesses, who the ALJ found to be lacking in experience as to the public school system and projecting testimony from the role of an advocate rather than a witness. Affording the ALJ's determination the "special weight" it deserves, this Court can find no rational basis for disagreeing with his credibility determinations and with his factual findings derived therefrom.

In reaching this conclusion, the Court finds that the ALJ applied the applicable law and allowed all relevant evidence to be set forth on the record with regards to the credentials of Plaintiffs' experts. Plaintiffs argue that the ALJ did not allow their experts to testify regarding their professional qualifications unless there was information to provide that was not included on their respective resumes. Plaintiff's further argue that the ALJ improperly based his opinion on the experts' perceived qualifications instead of on the appropriateness of the program offered for J.B. However, Plaintiffs ignore the fact that the ALJ gave full credit to the qualifications of both experts offered by Plaintiffs when he accepted them as experts. Further, the Court does not believe that the ALJ decision would have differed had he heard additional testimony regarding the credentials of Plaintiffs' experts. The ALJ's decision was not based entirely on the qualifications of the experts as asserted by Plaintiffs, but rather his decision was based upon a detailed review of all presented evidence, as demonstrated by his detailed opinion that outlines the opinions of not only the District's experts, but Plaintiffs' experts as well. The Court notes that Plaintiffs enrolled J.B. at Somerset Hills before the proposed IEP for J.B. for the 2005-06 was considered as an option or tested out for that matter. Therefore, the District's program for J.B. never had a chance to be fine tuned even further to fit his needs that become apparent after

an initial period in the classroom at the Adamsville School. Everything considered, the Court finds that the ALJ's acceptance of the Plaintiffs' experts, Dr. Breslin and Mr. Brothers as experts without hearing extensive testimony as to their professional qualifications was appropriate in a non-jury administrative hearing. The Court further finds that the ALJ's findings as to the appropriateness of the proposed IEP for J.B. are fully supported by the record below.

Turning next to Plaintiffs' related argument that the ALJ did not correctly apply the applicable law in his opinion when he found the program appropriate because the District's experts testified that once J.B. was placed in the program it would be modified to meet his individual needs. Plaintiffs rely upon *Lascari v. Board of Education*, 116 N.J. 30 (1989), which held that when determining the appropriateness of an IEP, the focus should be on the IEP actually offered and not on an IEP that could be provided. The Court disagrees with Plaintiffs' argument that, contrary to governing law, the ALJ's decision improperly alleged that the appropriateness of the proposed IEP hinged upon the District having an opportunity to modify it after J.B. enrolls in the school. Contrary to Plaintiffs' argument, the Court finds that the ALJ did not find that the appropriateness of the proposed IEP hinged upon the modifications that would be made after J.B. started at the Adamsville School. Instead, the ALJ found that "the District properly considered J.B.'s potential and education needs and that the IEP for the 2005-2006 school year was reasonably calculated to provide him with meaningful educational benefit in the least restrictive environment." (ALJ's June 13, 2007 Op. at 33). Therefore, making it clear that the ALJ did consider the individual needs of J.B. and found that the District's proposed IEP was appropriate to meet those needs. However, the ALJ also noted that an advantage of the District's program is that it is extremely flexible in adapting its programs for preschool students first receiving

educational services, thus the proposed program for J.B. could have been further molded to fit his specific needs had he been enrolled at the Adamsville School. Therefore, this Court finds that the ALJ satisfactorily considered all of J.B.'s educational needs in determining that the District's proposed IEP met those needs and was appropriate, while making note that the IEP could be made further appropriate if J.B. was enrolled at the Adamsville School and the staff had experience with him.

     Lastly, Plaintiff argues that the District's November 15, 2005 IEP was not reasonably calculated to confer a meaningful educational benefit to J.B, specifically because it failed to a) guarantee a one-to-one student to teacher ratio; b) include any opportunity for generalization or home program services; c) include a behavior program; and d) have five full days per week. However, the witnesses proffered by the District testified that they would further mold their program to fit the needs of J.B. The program called for a four-and-a-half-day per week in-district preschool disabled program with individual speech therapy two times a week for twenty minutes and consultation speech therapy once per week. The District witnesses explained that J.B. would start with a one-to-one student teacher ratio at the Adamsville School to meet his goals and objectives and after this initial period his program would be discussed further. It was also explained that while J.B.'s program did not have a home component, there were parent training sessions, communications through daily notebooks and opportunities to promote generalization. Therefore, this Court finds that the ALJ satisfactorily considered all of J.B.'s educational needs in determining that Plaintiffs failed to prove that the District's proposed IEP was inappropriate. After reviewing the District's proposed IEP as well as the other evidence presented below, this Court would independently conclude that the District's proposed educational program is

designed to provide J.B. with a meaningful educational benefit.

After reviewing the same record, the Court recognizes that the District's proposed IEP could have better provided for some of J.B.'s educational needs. For example, it may have been better for the proposed IEP to have attached a specific behavioral program and other learning specifics, instead of calling for further detailed plans to be developed and implemented after J.B.'s needs were examined during the initial period of J.B.'s enrollment. Indeed, the Court could identify a few modifications to the proposed IEP that may have better served J.B. However, that is not the standard by which the District's proposed IEP is judged. The Court cannot by law decide the case on whether the District's proposed IEP would maximize J.B.'s potential or provide him with the best education possible. *See Holmes*, 205 F.3d at 589-90. Instead, the Court is concerned with whether the proposed IEP would confer significant learning and a meaningful educational benefit on J.B., and just as the Court does not doubt that improvements to the proposed IEP are possible, the Court is equally convinced that the instant IEP would provide J.B. with significant learning and a meaningful educational benefit.

### IV. CONCLUSION

For the reasons stated above, this Court agrees with the ALJ's finding that Plaintiffs failed to establish that the District's proposed IEP for J.B. for the 2005-06 academic year was not reasonably calculated to confer significant learning and a meaningful educational benefit upon J.B. Consequently, Defendant's Motion for Judgment as a Matter of Law on the Record Below [dkt. entry no. 18] is GRANTED and Plaintiffs' Cross Motion for a New Hearing Before the Office of Administrative Law or Supplementation of the Record before the District Court [dkt. entry no. 20] is DENIED.

As an important postscript to this opinion, the Court notes that J.B. was never enrolled in public school. Had J.B. been enrolled at some time and the IEP developed proved to be inadequate, it seems entirely reasonable that the parents should be reimbursed for all costs of private enrollment.

An appropriate Order follows.

**Dated: February 27, 2009.**